HOUSTON OIL CO. OF TEXAS et al. v. GREEN et ux.

GREEN et ux. v. HOUSTON OIL CO. OF TEXAS et al.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1913. On Petition for Rehearing, February 25, 1913.)

No. 2,324.

1. VENDOR AND PURCHASER (§ 232*)—ORAL CONTRACTS—RIGHTS OF PURCHASER IN POSSESSION—SUBSEQUENT PURCHASER FROM VENDOR.

Where defendant purchased a tract of land by oral contract from the owner of the legal title, paid a part of the purchase price, and with the consent of the vendor went into possession and improved the land, and has since occupied the same with his family as a homestead, his equitable title is superior to the title of a subsequent grantee of his vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–562; Dec. Dig. § 232.*]

2. VENDOR AND PURCHASER (§ 232*)—BONA FIDE PURCHASER—NOTICE—POSSESSION BY PRIOR PURCHASER.

A purchaser of land which is in the actual occupancy of another claiming as owner under an equitable title from the same grantor cannot claim the rights of an innocent purchaser as against the equitable owner.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–562; Dec. Dig. § 232.*]

Appeal and Cross-Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Ancillary bill in equity by Charles Dillingham, receiver of the Houston Oil Company of Texas and others, against William Green and Mittie Green, his wife. Decree for complainants in part, and both parties appeal. Reversed on defendant's appeal.

H. O. Head, of Sherman, Tex., and T. M. Kennerly, of Houston, Tex., for appellants and cross-appellees.

Jno. B. Warren, of Houston, Tex., for appellees and cross-appellants.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

PARDEE, Circuit Judge. This is a suit by ancillary and supplemental bill, of Charles Dillingham, receiver of the Houston Oil Company of Texas, in the main receivership cause of Maryland Trust Company, Trustee, v. Kirby Lumber Company et al., filed September 3, 1908, against William Green and wife, Mittie Green, to recover title and possession of two tracts of land in Jasper county, Tex., being 86 acres out of the Sherrod Wright survey, and 66 acres out of the Jacob Youngblood survey. The original answer of defendants was filed December 7, 1908, and the case went to a master, who filed his report January 20, 1909, recommending judgment in favor of complainants. The Circuit Judge confirmed the report of the master February 26, 1909. Thereafter defendants moved to set aside said decree and the master's report, which motion was granted. Thereafter com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plainants filed, by permission of the court, amended bill, and defendants filed amended answer. The trial in the Circuit Court was had on such amended pleadings.

[1] Complainants allege, and prove, a regular chain of title from and under the sovereignty of the soil; complainants' immediate vendor being the Texas Tram & Lumber Company. Defendants allege an oral sale and purchase from the Texas Tram & Lumber Company, the then undisputed owner in 1896, the payment of the price, and adverse possession, occupancy, and improvements thereunder, and plead the 10 years' statute of limitation of the state of Texas. Complainants deny such oral sale, but allege that, if one was made, same was, by mutual agreement of the parties set aside and rescinded previous to the purchase of the property by complainants, and further that, if defendants had any such title to said property, same was an equitable title, and complainants were innocent purchasers for value of said property, acquiring the legal and record title thereto without notice of defendants' claim. Defendants deny the acts set forth by complainants and claimed by them to constitute a rescission, and besides plead that the property was the homestead of defendants at such time, and therefore that the consent of the wife was necessary to allow a rescission.

On the trial of the cause before the Circuit Judge, a decree was entered in favor of complainants for the 66 acres out of the Jacob Youngblood survey. A decree was entered in favor of the defendants for the 86 acres out of the Sherrod Wright survey, but charging same with the sum of $215 with 6 per cent. interest on same from January 1, 1902, which the Circuit Court Judge found to be the amount of the purchase money owing by the defendants thereon to the Texas Tram & Lumber Company, complainants' vendor.

The Circuit Judge filed no written opinion. From that portion of the decree refusing judgment for the 86 acres out of the Sherrod Wright survey complainants are prosecuting this appeal. Defendants are prosecuting a cross-appeal from that portion of the decree awarding complainants judgment for the 66 acres out of the Jacob Youngblood survey, and fixing a lien upon the 86 acres out of the Sherrod Wright survey awarded to defendants as above set forth.

Under our view of the evidence, William Green purchased the two tracts of land mentioned in the fall of 1896 from the then undisputed owner, the Texas Tram & Lumber Company, for an agreed price, part of which was paid at the time; and, with the consent of the vendor, Green went into possession and occupancy of the land, and has since lived thereon, making it his homestead and, claiming as owner, has improved, cultivated, and enjoyed the fruits of the same.

We do not find that at any time there has been any valid rescission of the contract of purchase. We find that the claimed acknowledgments of tenancy by William and Mittie Green to and under the Houston Oil Company of Texas were not sufficiently established under the evidence to defeat the equitable title of Green. They appear to have been without actual consideration and to have been procured under such circumstances that Green was deceived as to the actual facts and his own rights in the premises. One of them, however it may have

been intended, does not include the lands in controversy, but refers to 300 acres said to be located in the Robertson Bean headright survey.

[2] It is clear from the evidence of Green and others that he never intended to acknowledge any tenancy in conflict or derogation of his claimed rights as owner. The Houston Oil Company could not be an innocent purchaser with Green in actual occupancy claiming as owner.

We think that under the evidence Green has an equitable right to the land in question irrespective of the statute of limitations, and is clearly entitled to retain and to be decreed the owner of the same.

The decree appealed from is reversed, and it is now adjudged by this court that the said William Green and his wife, Mittie Green, have and recover from the Houston Oil Company of Texas all and singular the tracts and parcels of land situated in Jasper county, state of Texas, and described as follows, to wit:

"Eighty-six (86) acres out of the Sherrod Wright survey Abst. No. 47, beginning on Sherrod Wright east line and on the Jacob Youngblood west line at a post from which a pine bears S. 17 E. 1 varas another west 12⁴/₁₀ varas; thence N. 68.30 W. at 212 varas a pine from which a pine bears S. 3 E. 7 varas and a gum bears N. 27 E. 4⁴/₁₀ varas; thence down branch on which S. Wright lives S. 52 W. being the general course of the said branch 920 varas on a straight line to a post in the branch to Grants Bluff fro. which a black gum bears N. 71 W. 3⁴/₁₀ varas and a bay bears N. 24 W. 4⁴/₁₀ varas; thence south 66 deg. and 20′ east 881 varas to a stake on Sherrod Wright's eastern boundary; thence north 9 deg. and 20′ east with said eastern boundary 155 rods to the beginning corner post containing eighty-six acres more or less."

### And also:

"Sixty-six (66) acres out of the Jacob Youngblood survey, abstract No. 549, patent No. 195, vol. 18. Beginning on the east boundary line of Sherrod Wright's league a post from which a pine marked X bears S. 41 deg. W. 1.8 varas a pine same mark S. 77 deg. E. 4 varas; thence north 60 deg. E. pine woods at 145 rods a post from which a pine is south 8 vrs. marked X and another pine bears N. 15 same mark varas; thence northwest at 145 rods to a post where the said Youngblood's north boundary line intersects the aforesaid Wright survey or league from which post a pine is north 62 deg. W. 5 varas, another N. 21 deg. E. 3.8 varas marked X each; thence south 9 deg. 30′ W. with the league line 1,097 varas to the beginning corner, containing sixty-six acres, more or less."

The Houston Oil Company of Texas to pay the costs of both courts.

### On Petition for Rehearing.

In the opinion and decision rendered in this case February 4, 1913, we did not pass upon the question as to whether William Green and Mittie Green were indebted to the Houston Oil Company for the purchase money of the land in question, because we found no pleadings in the case which presented such issue. In the petition for rehearing now filed, our attention is called to the fact that William Green and Mittie Green in their answer aver that, because no one had ever made demand of them for the purchase money agreed to be paid for the land in controversy, they assumed, because of their long service in behalf of the Texas Tram & Lumber Company, that the said company and its successors recognized the right of these defendants to the said land; and they further aver that they are ready, able, and willing, and

now offer, to pay the balance of the purchase money for the said property to whomsoever this court may adjudge it to be due, hereby offering to do all things in equity in the premises. And we further find in the evidence of said Green, defendant, that the original purchase price of the said land agreed upon to be paid was $380; that he paid thereon $256 cash; that thereafter said $256 was repaid to him by one Simmons, agent of the Texas Tram & Lumber Company, and received by him (Green) under protest.

The result of this evidence is that the entire amount of purchase money agreed to be paid has never been paid. For the Greens now to do equity in the case, it is necessary that that indebtedness of $380 should be recognized as a lien upon the lands hereinbefore adjudicated to the said William Green and Mittie Green. Under the circumstances, interest should be allowed thereon at the legal rate in Texas from the time the Houston Oil Company first asserted its claim as against said Green to the said land, which appears to be the filing of the ancillary bill in this case September 3, 1908.

It is therefore ordered that our former decree in this case be amended so as to adjudge that the parcels of land therein declared to be the property of William Green and Mittie Green be and the same are charged with a lien in favor of the Houston Oil Company in the sum of $380 with legal interest thereon from September 3, 1908; and, further, that the said lien is hereby foreclosed against said land, and William Green and Mittie Green are ordered to pay into the registry of the court within 90 days from the filing of the mandate herein the said sum of $380 with legal interest thereon from the date aforesaid for the use and benefit of the Houston Oil Company of Texas; and that should the said William Green and his wife, Mittie Green, fail or refuse within the 90 days from said date to pay over said money with interest thereon, then, upon application of the Houston Oil Company of Texas, let orders be issued directed to the marshal of the Eastern district of Texas directing the said marshal to seize and sell the said tracts of land as under execution, in accordance with the provisions of the law in such cases made and provided, and apply the proceeds of sale to the costs of executing said order of sale and then to the payment of the sum of $380 and legal interest thereon from September 3, 1908, to the Houston Oil Company, and shall then pay the balance, if any be, over to the said William Green and wife, Mittie Green.

And with the decree thus amended, the petition for rehearing is denied.